## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

WARREN BURNETT                                                CIVIL ACTION

VERSUS                                                        NO. 15-1208

ROBERT TANNER, WARDEN                                         SECTION "I"(5)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### I.      Procedural and Factual History

Petitioner, Warren Burnett, is a state prisoner incarcerated at Rayburn Correctional Center in Angie, Louisiana.[2]  On September 21, 2007, he was charged by felony bill of indictment with one count of aggravated rape.[3]  At his arraignment, Burnett pleaded not guilty

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is required only when the petitioner demonstrates that his claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that it relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3, Petition.

[3]State Rec., Vol. 2 of 7, Bill of Indictment, 9/21/07.

to the charge.[4]  On June 11, 2009, prior to trial, the State filed an amended bill of information

charging Burnett with two counts: (1) one count of second degree sexual battery pursuant to

Louisiana Revised Statute 14:43.2; and (2) one count of attempted aggravated rape pursuant

to Louisiana Revised Statute 14:27:42.[5]

The relevant facts adduced at trial were summarized as follows by the Louisiana First

Circuit Court of Appeal:[6]

> On May 16, 2007, the victim, C.M., was living on Recreation Center Road in
> Varnado/Angie.  She indicated on that date the defendant entered her home
> through the unlocked door, while she was in the kitchen.  She had not invited
> him into the home.  Against her will, he pulled her into the bathroom by her
> hair.  He "put" her on the floor, spread her legs wide open, and pulled down his
> pants exposing his "private parts."  The victim indicated "[the defendant then]
> put it up me."  She described the item pushed into her as a piece of inhaler
> equipment from her asthma machine.  She did not want to have sex with the
> defendant or any contact with him.  She indicated she had seen the defendant
> before in "a lady's house down the road."  Further, she indicated, the defendant
> had come to her house a couple of times before the incident, but had not come
> inside.  She also identified the defendant as her attacker in a photographic
> lineup and in a live line-up on the day after the incident.  She indicated, prior to
> the incident, he had asked her to have sex with him, but she had refused.  The
> victim was twenty-nine years old at the time of the incident, but was mentally
> retarded, had a full scale IQ of 65, and functioned at about the level of a seven
> or eight-year-old child.
>
> Dr. John Whithurst Gallaspy of LSU Bogalusa Hospital was accepted by the court
> as an expert in the field of OB/GYN.  He was consulted by the emergency room
> to remove the foreign object from the victim's vagina.  When Dr. Gallaspy saw
> the victim, she was bleeding from her vagina and had a laceration on the back
> side of her vagina and in the region of her urethra.  She was in "very significant
> pain."  Dr. Gallaspy indicated the victim had suffered serious injury to her
> vagina, and could have possibly died by exsanguination.  After the victim was

---

[4]State Rec, Vol. 2 of 7, Minute entry, 10/24/07.

[5]State Rec., Vol. 2 of 7, Amended Bill of Information, 6/11/09.

[6]State Rec., Vol. 1 of 7, 1st Cir. Opinion, 2010-KA-2076, 12/21/11.

placed under anesthesia, Dr. Gallaspy used vaginal retractors to remove from the victim's vagina a hard plastic object used on a breathing machine.

The defendant's mother, Johnnie Mae Burnett, indicated the defendant and his brother, Perry, were living with her at the time of the incident. She claimed the defendant was at home with her from the evening before the incident until the police came to her house after the incident. She conceded, however, she had previously stated she had fallen into a deep sleep after she heard the defendant turn off the TV at approximately 3:00 a.m.

Following a three-day trial, on August 20, 2009, the jury found Burnett guilty as charged of both counts.[7] On September 22, 2009, Burnett was sentenced on the count of sexual battery to 15 years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence, and on the count of attempted aggravated rape to 45 years imprisonment at hard labor with the same restrictions.[8] The sentences were to run concurrently.[9]

Burnett appealed his conviction to the Louisiana First Circuit Court of Appeal. His counseled brief asserted two errors: (1) insufficient evidence to support a verdict of attempted aggravated rape; and (2) trial court erred in denying his motion for a new trial and for post-verdict judgment of acquittal because the evidence was insufficient to support a conviction for attempted aggravated rape.[10] He also filed a *pro se* brief asserting that the State used "suggestive questioning" of the victim at trial, resulting in a suggestive identification.[11] On December 21, 2011, the Louisiana First Circuit Court of Appeal affirmed Burnett's conviction

---

[7]State Rec., Vol. 6 of 7, Trial Transcript, 8/20/09; Vol. 2 of 7, Verdict Form, 8/20/09.

[8]State Rec., Vol. 2 of 7, Sentence Form, 9/22/09; Vol. 7 of 7, Transcript, 9/22/09.

[9]*Id.*

[10]State Rec., Vol. 1 of 7, Appellate Brief, 8/8/11.

[11]State Rec., Vol. 1 of 7, Pro Se Appellate Brief, 9/9/11.

and sentence.[12] The First Circuit Court found that the errors asserted by counsel were without merit, and that Burnett failed to preserve his challenges regarding the suggestive questioning issue, as he failed to timely object at trial.

Burnett filed an application for review with the Louisiana Supreme Court that was denied on June 22, 2012 without assigned reasons.[13] On September 20, 2012, when Burnett did not seek a writ of certiorari in the United States Supreme Court within ninety (90) days from this denial, his conviction became final. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).

On October 30, 2012, Burnett filed an application for post-conviction relief in the state district court.[14] In his application, he asserted two errors: (1) insufficient evidence to support his conviction on both counts; and (2) ineffective assistance of counsel. On May 13, 2013, the state district court denied his application.[15]

Burnett timely filed a related writ application to the Louisiana First Circuit Court of Appeal, which the First Circuit denied without reasons on September 9, 2013.[16] Similarly, on

---

[12]State Rec., Vol. 1 of 7, 1st Cir. Opinion, 2010-KA-2076, 12/21/11.

[13]*State v. Burnett*, 91 So. 3d 966 (La. 2012) (Mem); State Rec., Vol. 1 of 7, La. S. Ct. Order, 2012-K-0235, 6/22/12.

[14]State Rec., Vol. 7 of 7, Uniform Application for Post-Conviction Relief, 10/30/12. Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). Burnett's signature on his application is dated October 30, 2012, which is the earliest possible date he could have delivered it to prison authorities for mailing.

[15]State Rec., Vol. 7 of 7, District Ct. Order, 5/13/13.

[16]State Rec., Vol. 7 of 7, 1st Cir. Order, 2013-KW-1048, 9/9/13.

the Louisiana Supreme Court subsequently denied his related writ application without reasons.[17]

## II.    *Federal* **Habeas** *Petition*

On April 6, 2015, Burnett filed a federal petition for *habeas corpus* relief in this Court.[18] In his petition, Burnett asserts two grounds for relief: (1) insufficient evidence to support the conviction on both counts; and (2) ineffective assistance of counsel.

The State filed a response, questioning the timeliness of the petition.[19]   The State concedes that April 6, 2015, is the last day Burnett could have timely filed his petition, and that his signature on the petition is dated April 6, 2015.  However, the State argues that it that the date on the accompanying memorandum "appears" to have originally been dated "April 7, 2015" but written over with the date of "April 6, 2015."

The State has offered no evidence for this speculation except for the date of postmark on the envelope with is April 9, 2015.  Under the mailbox rule applied to federal *habeas corpus* petitions, the only relevant date, however, is the date that Burnett delivered to prison officials

---

[17]*State ex rel. Burnett v. State*, 139 So. 3d 1023 (La. 2014) (Mem); State Rec., Vol. 7 of 7, La. S. Ct. Order, 2013-KH-2407.

[18]Rec. Doc. No. 3.  The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including *habeas corpus* petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for deliver to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Burnett's signature on the petition is dated April 6, 2015, which is the earliest date on which he could have presented his pleadings to prison officials for mailing to this Court.

[19]Rec. Doc. No. 17, State's Response.

for mailing, not the date it was actually mailed.[20]   The State has not proven that the date Burnett dated his signature was not the date that he delivered the petition to prison officials for mailing, and therefore this Court deems the petition filed April 6, 2015.  As the State has conceded that April 6, 2015 was the last day to timely file the petition, the Court finds the petition was timely filed.

As the State also asserts that Burnett's claims fail on the merits, the Court now turns to a review of the merits.

### III.    Standards of a Merits Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

A state court's determination of factual issues is presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be

---

[20]*See* n. 18, *supra*.

correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

A state court's determination of questions of law and mixed questions of law and fact is given deference under 28 U.S.C. § 2254(d)(1), unless the decision "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States, or ... involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The "contrary to" and "unreasonable application" clauses have distinct meaning:

> A decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Under § 2254(d)(1)'s "unreasonable application" language, a writ may issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001) *(quoting Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)) (citations omitted).  However, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (*quoting Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. at 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002), *cert. denied, sub nom, Neal v. Epps*, 537 U.S. 1104 (2003).

The burden is on the petitioner to show that the state court applied the precedent to the facts of the case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24–25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787, 178 L.Ed.2d 624 (2011)).

## IV.     *Petitioner's Claims*

### 1.     *Sufficiency of the evidence*

Burnett contends that the State failed to produce sufficient evidence at trial to support both the sexual battery and attempted aggravated rape convictions.  Specifically, he argues that because none of his DNA was found at the crime scene or introduced as evidence, the evidence was not sufficient to prove he was the perpetrator.  Furthermore, he questions the credibility of the victim, who he argues was clouded by her own imagination due to her low mental capacity, and that she only identified him because she recognized him from the neighborhood.  Finally, he also argues that the State failed to prove that he attempted to penetrate the victim with his penis, which was a necessary element for the aggravated rape charge.

A claim of insufficient evidence presents a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  On

direct appeal, Burnett raised only part of this claim, challenging the sufficiency of the evidence of his attempted aggravated rape conviction. The Louisiana First Circuit rejected that claim on the merits. Therefore, as to this part of his claim, this Court must examine whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at 319; *see also Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez*, 529 F.3d at 594. The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are within the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993)).  Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

Despite not citing *Jackson*, it is clear that the Louisiana First Circuit properly applied the correct standard, as it noted that "[t]he standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt."[21]  The First Circuit then considered the essential elements of attempted aggravated

---

[21]State Rec., Vol. 1 of 7, 1st Cir. Opinion, 2010-KA-2076, 12/21/11.

rape under Louisiana law at the time.[22]  In relevant part, Louisiana Revised Statutes 14:42

provided:

> A.  Aggravated rape is a rape committed ... where the ... vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following reasons:
>
> . . .
>
> (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.
>
> . . .
>
> C. For purposes of this Section, the following words have the following meanings:
>
> . . .
>
> (2) "Mental infirmity" means a person with an intelligence quotient of seventy or lower.

La. R.S. § 14:42 (West 2009).  Furthermore, under Louisiana law, an "attempt" is a separate but

lesser grade of the intended crime.  La. R.S. § 14:27.  "Any person who, having a specific intent

to commit a crime, does or omits an act for the purpose of and tending directly toward the

accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall

be immaterial whether, under the circumstances, he would have actually accomplished his

purpose."  *Id.*

"Specific intent" under Louisiana law is defined as "that state of mind which exists

when the circumstances indicate that the offender actively desired the prescribed criminal

consequences to follow his act or failure to act."  La. R.S. § 14:10.  Specific intent is a question

to be resolved by the fact finder, and may be inferred from the circumstances of the

transaction.  *State v. Henderson*, 762 So. 2d 747, 751 (La. App. 1st Cir. 2000).

---

[22]Louisiana's rape statutes have since been amended.  The statutes quoted herein are the version in effect at the time of Burnett's conviction and appeal.

Here, the jury clearly believed the circumstances of the crime, as set forth by the testimony of the victim, supported the inference of specific intent for aggravated rape. The fact that the victim testified that the defendant removed his pants and was kneeling on the floor behind her prior to penetrating her with the plastic object supports this inference. It was not unreasonable for the jury to conclude that he had the specific intent to commit an aggravated rape. Furthermore, the evidence showed that the victim suffered from a mental infirmity, an IQ of less than 70, and therefore the jury could reasonably conclude that she was unable to resist due to this infirmity. Because he was convicted of <u>attempted</u> aggravated rape, it is immaterial that actual intercourse did not occur. Finally, a lack of DNA evidence is not an affirmative defense to either of the crimes–indeed, circumstantial evidence is sufficient to support a conviction in Louisiana: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. § 15:438.

The Louisiana First Circuit Court of Appeal clearly reviewed the essential elements of the crime, and held that the jury had reasonably inferred the specific intent necessary to support a conviction for aggravated attempted rape. It is not this Court's role to second guess the jury's role as a fact-finder. This decision was neither contrary to, nor an unreasonable application of, United States Supreme Court precedent. Burnett is not entitled to relief on this part of his claim.

In his second part of this claim, Burnett contends that there was also insufficient evidence to support the second-degree sexual battery conviction. This part of his claim was raised in his *pro se* post-conviction application and was denied by the district court. However,

the district court erroneously deemed the claim "repetitive" as "already raised on appeal." In fact, the only challenge in Burnett's direct appeal was to the sufficiency of the evidence for the attempted aggravated rape claim.  Because the Louisiana courts did not reach the merits of this part of Burnett's claim, this court's federal *habeas* review is not subject to the deferential standard that applies under the AEDPA to "any claim that was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d).  *Cone v. Bell*, 556 U.S. 449 (2009).

However, even under *de novo* review in this Court, this claim nevertheless fails under the *Jackson* standard.  The evidence at trial clearly supported the second degree sexual battery count.  The relevant statute states:

> A. Second degree sexual battery is the intentional engaging in any of the following acts with another person when the offender intentionally inflicts serious bodily injury on the victim:
>
> (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
>
> (2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
>
> B. For the purposes of this Section, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

La. R.S. § 14:43.2.  Here, the evidence adduced at trial through various testimony and physical evidence of the breathing apparatus was certainly sufficient to show that the victim was intentionally penetrated by a sharp plastic object that caused serious bodily injury.  The jury determined that the victim's identification of Burnett was credible, and that determination is not for this Court to reconsider.  Again, the lack of DNA evidence is immaterial here, given the

other record evidence adduced at trial.  Accordingly, Burnett is not entitled to federal *habeas corpus* relief on this claim.

### 2.    *Ineffective assistance of counsel*

In his second and final claim, Burnett contends that he received ineffective assistance of counsel at trial.  Specifically, he contends that his counsel should have: (1) filed a motion to have the DNA evidence disclosed, (2) hired an expert to determine if the victim could distinguish right from wrong, and (3) filed a motion to quash the bill of information charging him with second degree sexual battery and attempted aggravated rape, because the bill of information violated the double jeopardy clause.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.  Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance

is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).   A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland test*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.   In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*   In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett*, 796 F.2d at 793.

Because the state district court rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA,

federal *habeas corpus* review of ineffective assistance of counsel claims is in fact doubly

deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, ––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (citation omitted). The *Harrington* Court

went on to explain:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence

under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 788 (citations omitted; emphasis added).

Here, Burnett first contends that the failure to file a motion to disclose the DNA evidence amounted to ineffective assistance of counsel. In response, the State notes that the State in this case provided open-file discovery, so such a motion would be unnecessary. This Court's review of the record confirms that the State allowed for inspection of the file of all materials except the screening sheet and those protected by the Victims' Rights Legislation.[23] Not only would such a motion therefore be irrelevant, but there was testimony at trial that none of the evidence tested revealed any of Burnett's DNA. Indeed, Burnett has argued that the <u>lack</u> of DNA evidence should render his conviction invalid due to a lack of sufficient evidence. It is thus unclear why defense counsel would need to further inspect the DNA evidence, which the State conceded did not contain DNA from Burnett.

Burnett's claim regarding his counsel's failure to call an expert witness to testify regarding the victim's competence must also fail. As the United States Fifth Circuit Court of Appeals has explained regarding claims of uncalled witnesses:

---

[23]State Rec., Vol. 2 of 67, Answer to Motion of Particulars, Discover and Inspection, 10/22/07.

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Burnett has set forth no affidavits, nor any evidence to support this claim. Rather, he merely speculates that an expert would have helped his case. He is not entitled to relief on this issue.

Finally, Burnett argues that trial counsel was ineffective because counsel never filed a motion to quash the indictment based on double jeopardy, because the same evidence is required to prove second degree sexual battery and attempted aggravated rape. This claim must fail, as his double jeopardy argument is meritless, and therefore there was no reason for counsel to file a motion on this basis.

The relevant test to be applied to determine whether two statutes improperly punish the same offense in violation of double jeopardy is to "compare the two statutes at issue and ask whether each provision requires proof of an additional fact which the other does not."

18

*United States v. Singleton*, 16 F.3d 1419, 1422 (5th Cir. 1994) (applying test from *Blockburger v. United States*, 284 U.S. 299 (1932)) (quotation marks omitted).

Here, the offenses are clearly distinct.  Attempted aggravated rape requires the specific intent to commit vaginal oral or anal sexual intercourse, and also requires an aggravating factor regarding the victim–whether it be age or mental infirmity among others.  *See* La. R.S. 14:42 (West 2009).  In contrast, the second degree sexual battery statute requires serious bodily injury, and can include the use of an instrumentality.  *See* La. R.S. § 14:43.  Because each offense requires the proof of different elements, there is no federal double jeopardy implication.  It was therefore not ineffective assistance for trial counsel not to file a motion to quash on these grounds.

The state courts' rejection of Burnett's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, United States Supreme Court precedent.  Burnett is not entitled to federal *habeas corpus* relief on this claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Warren Burnett be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[24]

New Orleans, Louisiana, this __13th__ day of _____January_____, 2015.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[24]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.